[No. 923. Decided December 20, 1893.]

T. L. FOX et al., *Respondents*, v. BURLINGTON MANUFAC-
TURING COMPANY et al., *Appellants*.

### CONVERSION — LIABILITY OF CORPORATION — EVIDENCE — ESTOPPEL.

Although a contract of lease signed by all the stockholders of a corporation may not be technically a properly executed contract on the part of the corporation, yet it is admissible in evidence, in an action of conversion, to show that the lessees were in possession and were operating a certain shingle mill for themselves, and not as agents of the corporation.

The fact that the lessees of a shingle mill from a corporation conducted the business of the mill in such a way as to induce those

doing business with them to suppose that the mill was still operated by the corporation, it consenting thereto, will not estop the corporation from denying liability for conversion of shingle bolts by such lessees.

*Appeal from Superior Court, Skagit County.*

*Million & Houser,* for appellants.

*Sinclair & Smith,* for respondents.

The opinion of the court was delivered by

HOYT, J.—This action was brought to recover the value of certain shingle bolts alleged to have been wrongfully taken by the defendant, and converted to its use. The undisputed testimony showed that the bolts were taken by Larson and Luddington, and the vital question involved in the trial was as to whether or not, at the time of such taking, they were acting as the agents of the defendant. The defendant was the owner of a certain shingle mill, to which the bolts were taken by said Larson and Luddington, and there cut into shingles. The plaintiffs claimed that at the time the mill was being operated and controlled by the defendant. The defendant, however, claimed that it was not, and that said Larson and Luddington were operating said mill as lessees of the corporation, and that it had no control whatever over the question as to what bolts should be cut therein. The controversy growing out of these opposite contentions was the one upon which the verdict of the jury probably turned, and we shall, therefore, confine our discussion to the questions connected therewith, as in our opinion the other questions suggested by the record will not arise upon a re-trial.

Defendant, to prove its contention as to this controversy, introduced two or three witnesses who testified to the fact that the mill was thus being operated by said Larson and Luddington on their own account as lessees of the defendant, and that such defendant had no connection whatever

with its operation, excepting that it, or its stockholders, were to receive a certain sum for each thousand shingles marketed by said Larson and Luddington. The defendant, in confirmation of such testimony, offered in evidence a contract made between the several stockholders of the defendant as the party of the first part, and Larson and Luddington as the party of the second part, by which it was agreed by said party of the first part that the said party of the second part should have possession of said mill for the purpose of cutting shingles therein, and that of the proceeds of such shingles when marketed by the party of the second part the said party of the first part should receive twenty-five cents for each thousand, and that when the money so received had amounted to $6,450 the said Larson and Luddington should become the owners of all of the stock of the corporation, and by said second party that they would take possession of said mill and operate it to its full capacity, and, subject to the regulations provided for in said contract, pay to said party of the first part said sum of twenty-five cents for each thousand shingles so manufactured and marketed. The court excluded this contract from the consideration of the jury on the ground that it was not the contract of the corporation, and in so doing we think it committed error, for while it is true that technically such contract was not between the corporation and Larson and Luddington, yet, having been signed by all of the stockholders and by the said Larson and Luddington, it was a circumstance which tended to throw light upon the nature of the occupancy of the mill by said Larson and Luddington; that is to say, it tended clearly to confirm the testimony of the defendant's said witnesses to the effect that the corporation was not operating the mill in any sense whatever, but that the same was being operated and fully controlled by said Larson and Luddington, and, such being the force of the con-

tract, the defendant was entitled to have it considered by the jury.

The respondents seem to have attempted to meet the case made by the defendant upon this question by testimony tending to show that said Larson and Luddington conducted the business relating to said mill in such a way as to induce those doing business with them to suppose that the mill was still being operated by the corporation, but such fact could have no influence in determining the question under consideration. The court or jury were not called upon to decide as to what would have been the rights of one dealing with said Larson and Luddington, as between him and the defendant corporation. Such a person might be able to hold the defendant corporation responsible for what was done by reason of such a method of conducting the business, and its consenting thereto. But in the case at bar the plaintiffs are not claiming by virtue of any contract relation as between them and Larson and Luddington, or the defendant. Their claim is founded entirely upon the wrongful act actually done by said Larson and Luddington, and, such being the case, the defendant corporation could not be liable therefor, unless, as a matter of fact, it was connected with the tort. However much it might appear to have had such connection would be entirely immaterial, if, in fact, it had none. The tort was either committed by it by some active participation therein in fact, or it was not committed. It could only be liable for the tort of said Larson and Luddington in the event of their acting for it or at its instance or in its behalf. No question of estoppel is raised by the record.

For the error in excluding the contract above referred to, the judgment must be reversed, and the cause remanded for a new trial in accordance with this opinion.

SCOTT and STILES, JJ., concur:

DUNBAR, C. J., and ANDERS, J., not sitting.